Madam Clerk, please call the last case. 215-440 Donald Smith v. Orquist Co. Counsel, you may proceed. Good morning again, Your Honors. Counsel, will you please the Court? I'm Jason Esmond, once again, here on behalf of the plaintiff, Donald Smith. I would like to reserve five minutes for rebuttal. Thank you. The issue before us here, again, is manifest way. It's our position that the Commission's decision that the plaintiff did not sustain a permanent aggravation of a pre-existing condition was against the manifest way of the evidence. There's no dispute that the plaintiff sustained an injury on February 21st of 2011. He was taken off work at that time, paid TTE benefits for approximately four months. The issue here is whether or not that injury resulted in a permanent aggravation of the pre-existing condition. Was his pre-existing condition symptomatic before the accident, wasn't it? Minimally, according to the plaintiff's testimony. He testified that he had occasional pain in his neck, but that it was nothing like his symptoms after his February 2011 injury. When was he last treated before February 2011? The last actual treatment visit was in November of 2007. Actually, he saw a doctor three weeks before the accident. Well, we're talking about the... Three weeks before this alleged accident and complained about, let's see here, significant neck pain and right hand numbness with loss of grip strength. I'll talk about that record first. In this case, the commission had a hard time squaring Mr. Smith's testimony about his prior symptoms with the medical records. I would agree. The prior medical records. That's correct. Regarding that visit from three weeks before, that record notes he was seen at that time for dizziness. He does mention he has some symptoms in his neck. He also mentions the numbness in his hand. But he does... There's no reference to radicular symptoms going from the neck down the arm into the hand. The examination at that time notes no abnormal findings. The only abnormal finding is positive pain wounds and tunnel signs, which could indicate carpal tunnel in the hand, which could be causing those symptoms in his hand. His physical examination the day after his injury note significant examination facts. They note a positive spurling sign bilaterally with the right greater than the left. They note painful range of motion. They note tenderness over the trapezial muscle. So the findings are drastically different from that visit three weeks prior. His testimonies that his symptoms were drastically different as well. And then looking even further back, we obviously know that there was an injury in 2007 for which he did have treatment. Regarding that treatment, his symptoms were generally confined to his left arm, from his neck and into his left arm. There is a notation to some right arm symptoms in January of 2007. However, when he had an injection by February 14th of 2007, he noted the right side symptoms were gone. He doesn't then treat for right-sided and right radicular symptoms until his injury. So there is a significant gap in that prior injury and those preexisting symptoms and his actual injury date. Noting that visit three weeks prior, which I don't think reflects similar symptoms to what he had after his injury. Also note that the plant was able to work during that entire time. He worked for nearly a year for the respondent without any restrictions, without any limitations. The day after his injury, he was off work. He hasn't worked since. He also testified to a job he had done before he started working for the respondent, in which he was painting cars and painting houses, which would also involve the use of his arms. So his ability to work is drastically different before and after his injury. The MRI that was performed back in 2007 is also significantly different from the MRI that was performed following his injury. The prior MRI noted mild pheromonal stenosis at two different levels and no findings at C6-7. Following his injury, the MRI is indicating severe pheromonal stenosis at C4-5 and at C5-6, with the spurring at C6-7. The MRI is showing drastic change in his condition before and after. So the before and after picture would evidence that there was a permanent aggravation of his condition at the time of his February of 2011 injury. Also, his doctor who had seen him in 2007, Dr. Sliva, was the same doctor who saw him after his injury in 2011. Dr. Sliva noted in his notes that he had sustained an aggravation of his preexisting condition. The respondent's examining physician, Dr. Salehi, also offered the opinion that the type of injury he described could cause a permanent aggravation, and that if his symptoms were different before and after, that would be evidence of an aggravation. What was Salehi's opinion, though? Well, his opinion was that the visit three weeks before evidenced that those symptoms were outgoing. And had he reviewed the medical records from 2006, 2007, 2008? He had reviewed those as well. All right, and now your Section 12 examiner had not reviewed those records. He had not reviewed the 2006, 2007 records. He had reviewed the visit three weeks prior to the injury. So, you know, it's a manifest weight case. I mean, how can you say there was not sufficient evidence in the record for the commission to reject his testimony about what his prior symptoms were when there was actually a lot of evidence in those records to rebut what he testified to? Well, I don't think there was a lot of evidence to rebut. Well, he testified he never missed work as a result of the prior accident. However, the medical records show that he was taken off work. The medical records show he was taken off work. He testified that he had no radicular pain in his right upper extremity, and there were multiple references. He said he was treated just for stiffness in his neck before. The records show, like, years of treatment for severe neck problems. Regarding the visit, regarding his right arm symptoms, I think there was one or two visits, one or two visits four years prior to his injury and six years prior to his testimony. It's not necessarily contradictory when the majority of the symptoms for that prior injury were to his left side. January 2007 reported shooting pain in the right upper extremity and armpit area. February 28, 2007, same thing. August 2007, he told Dr. Sliva that the pain in his right upper extremity and neck was so bad he couldn't work, and that's when he was taken off work. The majority of those records, though, are to the left side. So I think when he's testifying six years after the fact, he's likely remembering that those prior symptoms were to the left side because 90 percent of those treatment records were to the left side. When you couple that with three weeks before the accident, he's going to the doctor saying, I've got significant neck pain and tingling in my right. Those symptoms are still different than what he's describing after the injury with those neck pains radiating down his arm and into his armpit and down his arm. So those are a change in symptoms. But to find the way the commission did, I think they have to ignore multiple things. They have to ignore that gap in treatment before that three-week visit. They have to ignore his testimony, obviously, but also that the MRI was different and that his ability to work, at least for a defendant. Did Dr. Salehi address the difference, what you're describing as a difference in the MRI? I don't recall that he did. I didn't see it in his testimony. So I think there are quite a few things that have to be ignored in order to find that that decision was consistent. There's no testimony, no evidence from the defendant indicating that he did miswork for the defendant in the nearly a year that he worked for them before his injury. Thank you. Thank you, counsel. Counsel, you may respond. Good morning. I'm Margaret McGarry, and I'm here for Orpitt Companies. Judge, as you indicated, there's ample evidence to support the commission's decision in this case. The arguments made by counsel in support of a reversal are in contradiction with the medical records, which are outlined in great detail in the commission decision and in our brief. Counsel argues first that the petitioner's symptoms were limited to the left upper extremity in 2007, but that's just not the case. Throughout 2007, he complains of right arm, right hand numbness, right-sided neck pain, right armpit pain. And most importantly, if you look at Dr. Guffey's note, three weeks before the accident, the petitioner is complaining of significant neck problems, and there's notes with numbness in the right hand and loss of grip strength. Dr. Guffey found these findings significant enough to request his prior MRI reports and EMG records from Radford Memorial Hospital. It brings me to counsel's second argument, where Smith and his attorney both try to downplay those symptoms of neck pain in the January 28, 2011 report, but Dr. Guffey's notes specifically indicate that he was complaining of significant neck pain. He was also noting that he was having difficulty sleeping because of his neck pain. Interestingly, he was also complaining of dizziness, which in 2007, when he goes to Dr. Strom, he relates dizziness and lightheadedness to neck pain and right upper extremity symptoms. The existence of this pre-accident right-sided neck pain and right-sided arm pain is also reiterated in Dr. Stiles' note from February 22, 2011. At that point, Dr. Stiles notes that the petitioner reported having experienced worsening neck pain and right arm and hand pain over the past several months, and that the pain had been worsening over the last three weeks. So the petitioner himself at that point is admitting that he was experiencing these right-sided symptoms in the months leading up to the accident. Counsel also points to the February 24, 2011 MRI to support his position and claims that the MRI showed findings that were greater in severity as to those in the pre-injury MRIs. Counsel claims that the February 2011 MRI findings were listed as severe, but that word does not appear anywhere in the MRI report. The MRI report indicates that the radiologist in 2011 compared the 2011 MRI report, or the MRI films rather, to those from October 26, 2006, and the radiologist specifically states essentially stable MRI findings as compared to the October 2006 findings. The body of the report goes on to use the words remains, again, redemonstrates, and stable to describe his condition. The radiologist notes that there are multilevel facet changes, and again, they remain greatest at C4-5, and then the radiologist goes on to note that there were a redemonstration of pyramidal stenosis, which remained greatest at the left on C4-5 and bilaterally C5-6 levels. So there's just no indication in the 2011 MRI report that there was an increase in pathology from the radiologist's point of view. And this is not to mention the fact that the petitioner reported the exact same symptoms at the time of trial that he did in 2007. He testified that he could reproduce his symptoms if he moved his body in certain ways. He reported that if he leaned over or put his shoulders up and looked back with his head, he would reproduce the symptoms. And these are the exact same movements, including looking up, leaning forward, and arm abduction and overhead use of arms, that he reported throughout 2007 as producing his symptoms. Really more of the same surgery is being recommended. That was in 2007 and 2008. And we must also point out that Smith's credibility is called into question. At the time of trial, he testified that his symptoms were significantly different in 2011. However, they're the same. They're the same symptoms that he reports in 2007. And in January 2011, he's reporting that he has difficulty sleeping, difficulty driving. These are all things that were repeated over and over again in his pre-accident medical records. And again in 2011, in January, three weeks before the accident, he's saying neck pain is causing him to lose sleep. He's having trouble sleeping. Again, he testified that before the accident, he only treated for neck stiffness, which is clearly not the case. He treated for significant neck issues before the accident in 2006, 2007, 2008. He also testified that he never lost any time from work before this accident, which isn't true. He was taken off work in 2007, and no doctor even ever released him to return to work. And at this point, his treating doctor doesn't have him off work. The treating doctor has him on 30-pound restrictions. Which next goes to the opinions of Dr. Slahey and Dr. Coe. Dr. Slahey, based on the totality of the medical history and medical records, found that Petitioner sustained a temporary aggravation of this permanent condition and opined that the radicular complaints were not related to the work accident, as there's a clear history, even up until three weeks before the accident, dictating that he had these radicular complaints. Dr. Coe testified that his opinions were based on his understanding that surgery had not been recommended before the accident. He also indicated that he based his opinion on his belief that the Petitioner had lost no time from work due to the prior 2007 treatment and condition. And he also based his opinions on his understanding that the Petitioner had never experienced any right upper extremity pain complaints prior to the 2011 accident. So again, counsel argues that the accident caused a permanent aggravation, but Smith's testimony at trial with regard to his current symptoms, again, support the conclusion that the work accident only caused a temporary aggravation of the pre-existing condition, as his symptoms at the time of trial were identical to those mentioned throughout 2007. And he also testified that his symptoms at the time of trial, the shooting pain complaints were only reproducible with certain particular body movements. For these reasons, we respectfully request that you affirm the decision of the commission in its entirety. Thank you, counsel. Counsel may reply. Regarding counsel's testimony that the symptoms were the same as they were in 2006-2007, we don't dispute that they were similar symptoms. He had similar symptoms, more predominant on the left side previously, but his symptoms were similar in 2006-2007. However, he then went over two years without any treatment for those symptoms. He returned to work. He worked for the respondent for nearly a year without any problem. Every doctor that saw him after his injury agreed that he required restrictions. He was working for nearly a year without any restrictions before he had this injury. That coupled with the change in the MRI. In the MRI, the radiologist did not note the change in the symptoms. Those are taken from Dr. Sliva, the orthopedic surgeon who was recommending the surgery. It was Dr. Sliva's review of the MRI that notes changes in the findings from the prior MRI. Looking at everything, mostly the change in his condition, both based on his testimony and his ability to work in the doctor's opinions, I think the manifest way of the evidence is that he did suffer a permanent aggravation of his preexisting condition. Thank you. Thank you, counsel. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement. A written disposition shall issue. The court will stand in recess subject to call.